## DOUGLAS R. GORDON, INDIVIDUALLY, ETC. ET AL. *v.* HOWARD COUNTY, MARYLAND

[No. 622, September Term, 1970.]

*Decided September 2, 1971.*

The cause was argued before THOMPSON, MOYLAN, POWERS, CARTER and GILBERT, JJ.

*Leroy W. Preston,* with whom were *Edwin F. Nikirk, Reginald D. Malloy, John Wheeler Glenn* and *O'Connor & Preston* on the brief, for appellant Douglas R. Gordon, etc. et al. *Leon Shampain,* with whom were *Vaughan & Shampain* on the brief, for appellant Tasker.

*Thomas E. Lloyd, County Solicitor for Howard County,* for appellee.

CARTER, J., delivered the opinion of the Court.

This appeal involves two actions instituted in the Circuit Court for Howard County. The original was filed by the surviving husband, infant children, and administrator of Dorothy V. Gordon, deceased, and the surviving husband and administrator of Ruby Estelle Gordon, deceased, against Jerry Allen Tasker; hereafter referred to as "Tasker" and Howard County, Maryland, a municipal corporation; hereafter referred to as "Howard County". The second was filed by the surviving husband and administrator of Cora M. Tasker, deceased, against Howard County. The two were consolidated for the purpose of trial and removed to Frederick County where they were tried on issues before a jury. The jury found both Tasker and Howard County guilty of negligence causing and contributing to the accident and assessed separate damages to the various plaintiffs below in both actions. The court entered judgments nisi for the amounts found by the jury, which in the joint action totaled $105,496.50. Thereafter Howard County duly filed a motion for a judgment N.O.V. in both actions which the court granted and accordingly entered judgments in both in its favor. From these judgments, the plaintiffs below and Tasker appealed in the joint action. There was no appeal from the judgment in favor of Howard County in the second action.

The accident occurred at the intersection of State route 216 and Brown Bridge road; hereafter referred to as "Brown Bridge", in Howard County on April 8, 1966 about 3:15 p.m. in clear weather. State route 216 had been duly designated as a through state highway whereby vehicles entering it were required to stop and yield the right-of-way before proceeding across it. Brown Bridge is a county road under the jurisdiction of Howard County. Route 216 runs generally east and west and Brown Bridge north and south. Immediately prior to the collision, a Chevrolet passenger car operated by Mrs. Dorothy V. Gordon and occupied by her mother-in-law,

Mrs. Ruby Estelle Gordon and two infant children was proceeding east on route 216 approaching the intersection. At the same time, a pick-up truck operated by Tasker, owned and occupied by his grandmother, Mrs. Cora M. Tasker, was proceeding north on Brown Bridge. The pick-up truck failed to stop before entering route 216 and struck the right front side of the Chevrolet about five feet within the intersection. An eye witness traveling on route 216 testified that he saw both cars immediately prior to the collision. He stated that the pick-up truck did not stop and "was going at a pretty good clip right out on the road and the other car was coming down at a pretty normal rate of speed." The investigating officer testified the Chevrolet left skid marks on route 216 for a distance of 51 feet immediately west of the point of impact. The collision resulted in the tragic death of Mrs. Dorothy V. Gordon, Mrs. Ruby Estelle Gordon, and Mrs. Cora M. Tasker. The Gordon appellants contend that Tasker was negligent in failing to stop and yield the right-of-way to traffic on route 216 before entering it and that Howard County was negligent in failing to properly warn travelers using Brown Bridge of a dangerous condition existing at the intersection. They further contend that this negligence on the part of both Tasker and Howard County was concurrent and was the direct and proximate cause of the accident.

State route 216 is a straight stretch of paved highway twenty-two feet wide and accommodates two lanes of traffic. Brown Bridge is approximately twenty feet wide and accommodates two lanes of traffic. The posted speed limits were fifty miles per hour on route 216 and thirty-five on Brown Bridge. The intersection was described as "wide-throated"; that is, Brown Bridge had a width of eighty feet where it joined the south side of the paved portion of route 216. At the intersection Brown Bridge curved in an easterly direction for traffic approaching from the south. This curve began about 89 feet south of the paved portion of route 216 and continued to the in-

tersection. A high hedge and shrubbery immediately adjoining the curve and to the east of it was located on private property. It obscured the State stop sign on the right for vehicular traffic approaching from the south until such traffic was immediately upon the intersection. There were two stop signs erected by the State on its right-of-way on route 216 for vehicles approaching on Brown Bridge from the south. The one on the right was located about twelve feet from the paved portion of route 216. The one on the left was intended by the State to supplement the one on the right and was located about twenty feet from the paved portion of route 216 with an angle somewhat less than a perpendicular facing of vehicular traffic approaching on Brown Bridge from the south. This angle was deliberately fixed by state authorities to avoid double reflection at night. Howard County, through its representatives, knew of the conditions existing at the intersection at the time of the accident. There was evidence to establish that the signs posted on Brown Bridge at the time of the accident consisted solely of one showing the speed limit to be thirty-five miles per hour, and a caution sign warning "Children at Play" both located about eight tenths of a mile south of the intersection. According to Tasker when he saw the State stop sign to his left near route 216, as he approached the intersection traveling on Brown Bridge he believed it was intended to direct traffic on route 216 and not on Brown Bridge and therefore did not attempt to stop his vehicle prior to entering the intersection.

The law of this State concerning the legal duty of a municipality to maintain the public highways under its jurisdiction in a reasonably safe condition for members of the public traveling upon them appears to be well settled. In speaking of this duty in *County Commissioners of Carroll County v. Staubitz,* 231 Md. 309 (1963), the Court of Appeals said at 314-315:

> "County Commissioners are charged with the duty of keeping county roads in good repair and

in a condition reasonably safe for travel and use, and the county, in an action against the county commissioners, may be held liable for injuries caused by any defect in a county road due to their negligence. *State v. Prince George's County,* 207 Md. 91, 113 A. 2d 397: *Walter v. Montgomery County,* 179 Md. 665, 22 A. 2d 472. The fact that the dangerous condition is not actually in the road, but is in close proximity to the boundaries of the road does not relieve the county of the duty to warn or protect travelers from such defect, if such defect would make the roadway unusually and extraordinarily hazardous for travel. *Birckhead v. Baltimore,* 174 Md. 32, 197 Atl. 615.

\* \* \*

In *Birckhead v. Baltimore, supra,* at page 38, this Court held that the dangerous place or condition, near a highway, which imposes a duty on a municipality to erect a railing, barrier, or other safeguard, must be such as would create a reasonable probability of an accident occurring to a traveler, ordinary care, the measure of the duty required, not exacting that the municipality guard against unusual or unforeseen accidents."

In speaking of the degree of care required of a municipality, the Court further said in *Baltimore v. Thompson,* 171 Md. 460 at 467:

"Such a liability does not arise from any failure of a general duty to light the highways but. from a failure to exercise reasonable care to guard the traveling public against some special condition of which the municipality had sufficient notice, which an ordinary prudent person might reasonably anticipate would endanger travelers on the highway while in the exercise of reasonable care."

In *Staubitz* the Court found there was no primary negligence of the County in failing to post warning signs at a ninety degree turn under the surrounding circumstances. In so holding, the Court quoted with approval: *Birckhead v. Baltimore, supra,* which held there was no duty on the municipality to erect railings along the edge of the highway to prevent travelers from going off the edge and striking large stones on adjacent property; *Roth v. Highway Commissioners of Baltimore County,* 115 Md. 469, which held there was no duty to erect a guard rail at the end of a large culvert with an adjoining declivity on a well-traveled road; *Wessels v. Stevens County,* 188 P. 490 (Wash.), which held no duty to mark an abrupt one hundred degree turn around the brow of a hill with an adjoining ravine because such a condition was usual in that State; *Clouse v. County of Dawson,* 74 N.W.2d 67 (Neb.) which held no duty to place warning signs on a curve bordering a ravine on the theory that such signs were not intended to serve the purpose of delineating limits of the road; *Olson v. Wayne County,* 59 N. W. 400 (Neb.) which held no duty to post warnings on a ninety degree turn leading to a bridge because to do so would impose too great a burden on the County; and *Dickenson v. Cheyenne County,* 18 N.W.2d 559 (Neb.) which held there was no duty to erect warning signs of a dead-end to a road with a borrow pit adjacent thereto where the dead-end could be seen for several hundred feet under normal conditions.

It appears from the general tenor of these authorities cited with approval by the Court of Appeals that in order to impose a legal duty upon a municipality to post warning signs along its highways or to take other precautionary measures to guard the safety of members of the public using such public ways, the existing hazardous condition must be indeed unusual and extraordinary in nature. Furthermore in accordance with the rule enunciated in *Birckhead v. Baltimore, supra,* at p. 38, the dangerous condition "must be such as would create a reasonable

probability of an accident occurring to a traveler." Applying this criteria to the conceded facts of this case and assuming that travelers proceeding north on Brown Bridge could not see the stop sign on their right until they were immediately upon the intersection, there was no obstacle in their line of vision to prevent them from seeing the stop sign on their left and to do so for a sufficient distance prior to arriving at the intersection to permit them to stop their vehicle before entering it. In fact, Tasker gave positive testimony that he did see the sign to his left as he approached the intersection. Under these conditions there existed no reasonable probability that a traveler on Brown Bridge, using due care, would not see the sign and seeing it would not heed its warning before entering the intersection. As was set forth in *Baltimore v. Thompson, supra,* at 467, the exercise of reasonable or ordinary care by the municipality to protect the safety of travelers upon its highways against specially hazardous conditions means those conditions "which an ordinary prudent person might reasonably anticipate would endanger travelers on the highway while in the exercise of reasonable care." We therefore hold that the trial judge was correct in ruling as a matter of law that under the conditions existing at this intersection with the supplemental stop sign on the left, visible to and actually seen by the appellant Tasker as he approached the intersection, that he failed to exercise reasonable care in interpreting the sign to be directed to traffic on route 216 rather than to himself on Brown Bridge, and that Tasker's negligence was the sole proximate cause of the accident. Even though the sign was at a slight angle somewhat less than perpendicular to traffic approaching on Brown Bridge from the south, it was in fact facing such traffic to a substantial extent, and could be and was seen by persons traveling in this direction. Therefore, there was no sufficient reason for the appellee County acting as a prudent person to reasonably anticipate that the existing State warning signs at the intersection were so deficient as to endanger trav-

elers on Brown Bridge in the exercise of reasonable care for their own safety in approaching the intersection from the south. These conclusions are matters about which the minds of reasonable men would not differ and therefore the trial court was correct in ruling as a matter of law that the facts were legally insufficient to permit the jury to find primary negligence on the part of the appellee Howard County.

In view of this holding, we do not reach the questions concerned in the other four grounds assigned by the trial court as the basis of its action in setting aside the verdict of the jury in favor of the appellants and against the appellee and entering judgments accordingly.

> *Judgment in favor of the appellee in No. 5956 affirmed.
> Appellants to pay the costs.*