Peter C. Chestnut, Vernon W. Salvador, Albuquerque, N.M., for plaintiffs.

William Lutz, U.S. Atty., Rhonda P. Backinoff, Douglas C. Henson, Asst. U.S. Attys., Albuquerque, N.M., for defendants.

**Marlene CARLSTON and Leo Carlston, in their own capacities and as the Personal Representatives of the Estate of Darlene Carlston, also known as Darlene Watson, Deceased, Plaintiffs,**

v.

**The UNITED STATES of America, Defendants.**

**No. CIV 86–1079 JC.**

United States District Court, D. New Mexico.

Oct. 15, 1987.

## MEMORANDUM OPINION

CONWAY, District Judge.

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment. The Court, having reviewed the pleadings, the evidence of record and the relevant law, finds that the motion is well taken and should be granted.

### I. Facts

At the time of her death, Darlene Carlston, also known as Darlene Watson, was

sixteen years old and a student at Fort Wingate High School, Fort Wingate, New Mexico, a boarding school operated by the Bureau of Indian Affairs (BIA). The BIA is an agency of the Defendant. Ms. Carlston enrolled as a student at Wingate in August of 1984. On December 8, 1984, two men in a car containing five cases of beer and a bottle of rum drove onto the campus and stopped outside of Dormitory #15 where Ms. Carlston was assigned for the weekend. A member of the dormitory staff noticed Ms. Carlston had been walking back and forth from her room in the dormitory past the dormitory staff to the back door and out to the parking lot every ten minutes for over an hour before the car drove up. When the car finally did drive up to Dormitory #15, Ms. Carlston left the campus without permission with the two men in the car. She was never seen alive again at the school. On the morning of December 10, 1984, Ms. Carlston's body was found in a rural area south of Gallup, New Mexico.

On September 9, 1986, Marlene and Leo Carlston, in their own capacities and as the personal representatives of the estate of Darlene Carlston, filed a Complaint for Wrongful Death against the United States of America. The action against the United States is brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 1331. The Plaintiffs claim that negligence by federal employees at the Wingate Boarding School, particularly breach of the duty of precaution and the duty to provide adequate supervision, training and hiring, was the proximate cause of Ms. Carlston's death.

Defendant now seeks summary judgment and argues that Ms. Carlston's death was not proximately caused by any acts or omissions of Wingate High School but by an independent, intervening cause. The government claims the independent, intervening cause was the felonious criminal conduct of a third party. A motion for summary judgment may be granted only when the record discloses that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion. *Security National Bank v. Belleville Livestock Commission Company*, 619 F.2d 840, 847 (10th Cir.1979). The Court should grant a motion for summary judgment unless there is evidence upon which a reasonable jury could find for the nonmoving party under the substantive evidentiary standard of proof that would apply at a trial on the merits. A mere scintilla of evidence is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Defendant's Motion for Summary Judgment is based on the theory that Ms. Carlston was the victim of an apparent homicide and that such a homicide was an independent, intervening cause of her death. To prevail, the government must show that no reasonable juror could find other than that Ms. Carlston's death was the result of homicide. The government must also show that, as a matter of law, death by homicide under the facts of this case is an intervening, superceding cause.

The government has supplied evidence that Ms. Carlston's death was a homicide through the affidavit of FBI agent Romero and through the autopsy report prepared by the New Mexico Office of the Medical Investigator (OMI). Agent Romero stated that when he first saw Ms. Carlston's body at the spot where it was found,

> her pants and panties were around her right leg only. The body was covered with mud and the earth in the surrounding area was disturbed as though a struggle had occurred. One of [Ms. Carlston's] shoes was discovered approximately fifteen feet from the body. Because of the observations made at the scene and the results of the investigation by the [OMI], her death was investigated as a homicide. Although no prosecution has taken place, investigation continues and the death is still being investigated

as a homicide by the Federal Bureau of Investigation.

Affidavit of Alfredo T. Romero, Exhibit C to Defendant's Memorandum in Support of Motion for Summary Judgment.

The OMI autopsy revealed a blood alcohol content of .172 and a large number of sperm in Ms. Carlston's vagina. There was also evidence of blunt trauma to the neck. The autopsy report states that the immediate cause of Ms. Carlston's death was "exposure with acute alcohol intoxication." On a later page, the OMI report states that autopsy findings indicated that the manner of death was homicide. Autopsy report from the OMI, Exhibit B to Defendant's Memorandum in Support of Motion for Summary Judgment.

In their response, Plaintiffs have offered no evidence that rebuts the government's claim that homicide was the cause of the death. Plaintiffs do state that there is some question of fact as to the cause of Ms. Carlston's death because the autopsy report indicates both homicide and exposure as causes of death. However, as noted in *Anderson,* supra, the Court must view the evidence offered by the nonmoving party through the substantive evidentiary standard of proof that would apply at a trial on the merits. In this case, the Plaintiffs would have to prove by a preponderance of the evidence that homicide was not the cause of Ms. Carlston's death. On the evidence presented, this Court finds that no reasonable jury could find by a preponderance of the evidence that Ms. Carlston's death was not the result of homicide. The autopsy report is not inconsistent. It merely indicates that actions of a third party resulted in Ms. Carlston's death from exposure. Moreover, Plaintiffs themselves have characterized their daughter's death in the Complaint as "the result of an apparent homicide." Complaint, paragraph 4. Plaintiffs also suggest that Ms. Carlston's death was the result of the homicide when one of the bases for their damages is the pain and suffering that their daughter experienced "between the time of her attack and her death." Complaint, page 4. As Plaintiffs have not submitted sufficient evidence upon which a reasonable jury could find that Ms. Carlston's death was not the result of a homicide, I find that there is no genuine issue of material fact—Darlene Carlston's death from exposure was the result of acts by a third party. Having determined that there are no genuine issues of material fact, the Court can consider whether, as a matter of law, the homicide was an independent, intervening cause of Ms. Carlston's death.

## II. Causation

In New Mexico, an independent, intervening cause is one which "interrupts and turns aside a course of events and produces that which was not foreseeable as a result of an earlier act or omission." New Mexico UJI Civ. 13–306 (1986 Recomp.). Thus, even assuming that the Defendant may have had a duty which it breached, it will not be held liable for Ms. Carlston's death if it was not foreseeable that Defendant's act or omissions would result in her death by the acts of third parties. In New Mexico, if reasonable minds can differ on the issue of intervening cause, the matter is one for the factfinder. *Rickerson v. State of New Mexico and City of Roswell,* 94 N.M. 473, 475, 612 P.2d 703 (Ct.App. 1980). See also *Bryant v. United States of America,* 565 F.2d 650, 654 (10th Cir.1977). When reasonable minds cannot differ on the issue of intervening cause, the matter can be decided as one of law. Moreover, New Mexico courts have found, as a matter of law, that a defendant is not liable for harm caused by the criminal acts of third parties. *F & T Co. v. Woods,* 92 N.M. 697, 700–701, 594 P.2d 745 (1979).

In *Sheppard v. United States of America,* 587 F.Supp. 1525 (Ariz.1984), the District Court faced facts almost identical to those presented by the case at bar. In *Sheppard,* parents of a seventeen-year old girl brought a wrongful death claim against the United States government based on the Federal Tort Claims Act. Plaintiff's daughter, Laura Sheppard, was one of several students living in BIA-supervised dorms in Flagstaff, Arizona. As a boarding student under eighteen, she was only allowed to check out for overnights in the company of a person designated for

that purpose by a parent. Due to an administrative error, Ms. Sheppard's age on school records appeared to be eighteen, and she was allowed to check herself out for the weekend of October 13, 1978. Unfortunately, Ms. Sheppard never returned to the school or to her family's home. Her bloodstained clothing and billfold were later found in a desolate area near Tuba City, Arizona. An individual subsequently confessed that he and his companion had assaulted and raped Ms. Sheppard. He also drew a map showing where they had buried her body.

At a bench trial, the government argued that Ms. Sheppard's death by homicide was an intervening, independent cause of her death and that any actions on the part of the school were not a proximate cause of her death. The Court, basing its decision on an Arizona state court case, agreed with the government and reasoned that "the harm which befell Laura was the product of felonious criminal conduct. That conduct was an intervening cause of such an extraordinary character that it could not have been reasonably anticipated to occur." *Sheppard*, 587 F.2d at 1528.

The state case relied on in *Sheppard* was *Chavez v. Tolleson Elementary School District*, 122 Ariz. 472, 595 P.2d 1017 (Ct. App.1979). In *Chavez* the court upheld a judgment n.o.v. which reversed a jury verdict in favor of the parents of a child who had been killed after she left an elementary school without permission. A puppy had wandered into an elementary school classroom and Plaintiff's daughter, a ten-year old student, said it lived in her neighborhood. She was told by the school principal to leave the dog outside and return to her classroom. She did not return to the classroom but disappeared from school. Three months later, her body was found in a field a few miles from the school. An individual subsequently confessed to abducting and killing the student after she left the school grounds. The *Chavez* court noted that no facts in the record indicated that school personnel should have been aware of the potential criminal conduct in the area. The court reasoned that it is untenable to argue murder is a foreseeable event which creates an unreasonable risk of harm to each child leaving the school grounds each day in the state of Arizona. Id., 122 Ariz. at 477–78, 595 P.2d at 1023.

Although *Sheppard* and *Chavez* are not binding on this Court, their reasoning is persuasive. Moreover, there is no contrary New Mexico law.[1] In determining whether or not Ms. Carlston's death by acts of a third party was the foreseeable consequence of Wingate High School's acts or omissions the evidence must be viewed in the light most favorable to the Plaintiffs. Plaintiffs contend that Bruce Hoover, the principal of Wingate High School at the time of Ms. Carlston's disappearance and death knew that one of the men with whom Ms. Carlston left the campus the day before she was killed was a "rascal" who had previously driven on campus and caused problems with Ms. Carlston and other girls. Plaintiffs also allege that Mr. Hoover spoke with this man's mother, who was a

---

1. In *Bryant v. United States of America*, 565 F.2d 650 (10th Cir.1977), the Tenth Circuit upheld the trial court's factual determination that negligence on the part of a BIA-supervised boarding school was the proximate cause of injury to three young boarding students. Like the present case, the action in Bryant was brought against the United States under the Federal Tort Claims Act to recover damages on a theory that negligent supervision of students at a BIA boarding school resulted in injury to students who ran away from campus. The Plaintiffs were three Navajo Indian boys aged seven and one-half to ten and one-half years old at the time of the incident. During the school year, the children were enrolled at the Chuska School, a boarding school administered by the BIA. In early January, the three boys ran away from the school after classes and tried to get home through the mountains. A snowstorm began and the boys were trapped in the mountains for four days. When they were found, the boys had sustained such serious frostbite to their legs that the legs of each of them had to be amputated. At trial, the government argued that if there was failure to supervise the school grounds after the dismissal of school, it was not the proximate cause of injury suffered by the boys. In upholding the trial court's verdict for the Plaintiffs, the Court noted that proximate cause was a question to be determined by the factfinder when reasonable minds could differ. The facts in the present case are significantly different in that Darlene Carlston's death was caused by third parties. This sufficiently distinguishes it from *Bryant*.

school employee, after Ms. Carlston was AWOL with him some two weeks prior to her final AWOL episode and subsequent death. Plaintiffs cite Mr. Hoover's deposition to support these allegations. Unfortunately, the photocopy of Mr. Hoover's deposition, which is attached as an exhibit to Plaintiffs' Response, is so poor that it is difficult to make out the full text of what was said on pages 88 to 90, the pages to which the Plaintiffs cite. Even assuming Mr. Hoover's deposition supports the Plaintiffs' allegations, this evidence is still not sufficient to convince a reasonable juror by a preponderance of the evidence that Ms. Carlston's death by homicide was foreseeable. This evidence certainly supports a claim that the school could have foreseen that Ms. Carlston might leave the campus without permission with a known troublemaker. However, there is a tremendous difference in foreseeing that a female student might spend the weekend with a troublemaker and foreseeing that student's death at the hands of a third party.[2]

Plaintiffs also submitted evidence upon which a reasonable person might find that students might die from exposure when absent without permission from the school campus. Answers to interrogatories posed by Plaintiffs indicate that on three occasions prior to Ms. Carlston's death, and on one occasion ten days after her death, Wingate students had died of exposure. These deaths all occurred between 1978 and 1984. In three of the four exposure deaths, the students were off the campus without permission. Plaintiffs have also offered as evidence the affidavit of Dr. Maura G. Rooney, "an experienced director of residential facilities for young people." Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, page 4. Dr. Rooney stated the following:

It is my opinion, based on the material I have reviewed on this case, that Darlene's death was not unforeseeable. The record shows that at least three other students died of exposure or froze to death; at least two of them died while

being improperly checked out or AWOL. One boy disappeared ten days after Darlene's death. He was seen by a school employee walking down the road, as she was driving to work at two in the afternoon. That boy died of exposure, trying to build a fire, while intoxicated.

Affidavit of Dr. Maura G. Rooney, Exhibit 12 to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment. A juror believing Dr. Rooney's opinion might find by a preponderance of the evidence that it was foreseeable to the school that a student AWOL from campus would die of exposure. However, foreseeing that a student AWOL from campus might die of exposure is not the same as foreseeing that a student AWOL from campus might die from exposure *as the result of a third party's intervention*. In the case of Darlene Carlston, her death from exposure was the result of acts perpetrated by an as yet unknown individual or individuals.

Even assuming that Wingate High school could have foreseen that Ms. Carlston might go AWOL again and spend a weekend with a troublemaker, and even assuming that it was foreseeable that students AWOL from campus might die of exposure, no reasonable juror could find by a preponderance of the evidence that Ms. Carlston's absence from campus without permission would lead to her death by the acts of a third party. To claim that the heinous, felonious acts of an intervening third party were a foreseeable consequence of Defendant's acts and omissions is to argue that Defendant should be the virtual insurer of the complete safety of all the students on its Wingate campus. Darlene Carlston suffered a tragic and premature death, but no reasonable juror could find by a preponderance of the evidence submitted in this case that the Defendant should be responsible for her death, particularly considering the fact that Ms. Carlston was almost an adult at the time of her

---

**2.** It should be noted that to date, no individual has been formally charged in connection with

Darlene Carlston's death.

death and that she voluntarily left campus without permission.

Accordingly, this Court finds that there is no genuine issue as to any material fact and that United States of America is entitled to judgment as a matter of law.

An Order in accordance with this Opinion will be entered.