870 P.2d 133

**John MADRID, Individually and as Conservator of the Estate of Ruben Madrid, a minor, and personal representative for the heirs of Armida Ramirez Madrid, deceased, and the United States of America, Plaintiffs–Appellants,**

v.

**NEW MEXICO STATE HIGHWAY DE-PARTMENT, an agency of the State of New Mexico, Robert and Jacqueline Blair, d/b/a Turner Ranch, and Stephen Yniquez, Defendants–Appellees.**

Nos. 13487, 14000.

Court of Appeals of New Mexico.

Jan. 11, 1994.

Certiorari Denied Feb. 18, 1994 and Feb. 25, 1994.

Frank K. Wilson, Wilson & Rank, Alamogordo, for plaintiffs-appellants.

Frank N. Chavez, William A. Walker, Jr., Reeves, Chavez, Greenfield, Acosta & Walker, P.A., Las Cruces, for defendant-appellee NM State Highway Dept.

Nancy Augustus, Walter R. Parr, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for defendants-appellees Robert and Jacqueline Blair.

## OPINION

BIVINS, Judge.

This action arose out of a collision in which a motorcycle hit a cow on a state highway south of Silver City, New Mexico. The driver and owner of the motorcycle, John Madrid (Plaintiff Madrid), was injured and his passenger, Armida Ramirez Madrid, was killed. Although the state highway where the collision occurred was fenced along the majority of its length, the cow could have escaped onto the highway through a gap or hole in the fence that was there because of disrepair. Plaintiff Madrid and the estate and the heirs of Armida Madrid (collectively referred to as Plaintiffs) brought action against the owners of the cow, Robert and Jacqueline Blair, doing business as Turner Ranch (the Blairs), and against the New Mexico State Highway

Department (the Department) for personal injury and wrongful death.

The district court granted the Department's motion for summary judgment reasoning that the failure to completely fence the highway was a matter of design and, consequently, the Department was immune from suit under NMSA 1978, Section 41–4–11(B)(1) (Repl.Pamp.1989). The district court also granted the Blairs' motion for summary judgment reasoning that the highway was classified as unfenced and Plaintiffs had failed to show specific negligence as a proximate cause for the cow's presence on the highway as required by NMSA 1978, Section 66–7–363 (Repl.Pamp.1987). Plaintiffs took separate appeals from the two summary judgments and these appeals were consolidated and are both addressed in this opinion. We reverse both summary judgment orders and remand to the district court for reinstatement of the original complaint.

*FACTS*

The collision with the cow occurred on State Highway 90 on July 2, 1989. The cow had actually been killed by another motorist, Stephen Yniquez, a short time before Plaintiffs approached the site on the motorcycle. Plaintiff Madrid's motorcycle then hit the cow, and as a result of the impact, Plaintiff Madrid, the driver, was injured, and his passenger on the motorcycle was killed. Stephen Yniquez was named as a defendant in this case, but is not a party to this appeal.

At the location of the accident, the highway is a four-lane, divided, public highway. Situated along the highway are various roadside businesses, a school, an airport, and pastures used for grazing cattle. There are cattle that belong to the Blairs grazing on pastures, known as Turner Ranch, on both sides of the highway.

Also, on each side of the highway there are fences that the Department erected. There are, however, gaps in the Department fences. Some of these gaps were made to allow access to roadside businesses. One of the larger gaps, which is the subject of this dispute, begins at the northeast corner of one pasture on Turner Ranch and continues along the pasture to the west side of the airport. A perimeter fence erected by some-

one other than the Department fills this large gap and surrounds the pasture and the airport, so the area is in fact fenced.

There are a number of ways that the cow could have gotten onto the highway. At the time of the accident, cow tracks were found on both sides of this perimeter fence, which had gaps or holes in it and was found later to be in disrepair. Cow tracks were also found near the airport access road, located at the end of the Department fence. This fence also had gaps or holes in it due to disrepair. The airport access road near the site of the accident apparently does not have a cattle guard. Also, after the motorcycle accident, an open gate was discovered behind the airport.

*DISCUSSION*

I. SUMMARY JUDGMENT

■ On review of a grant of summary judgment motions, this Court considers "the whole record for evidence that puts a material fact at issue." *Roth v. Thompson*, 113 N.M. 331, 335, 825 P.2d 1241, 1245 (1992). Where the facts are in dispute, grant of a motion for summary judgment is not proper. *Id.* We first discuss the statutory scheme regarding fencing and the duties that arise. We then apply those duties in determining if genuine issues of material fact exist.

A. NMSA 1978, Sections 30–8–13 and –14 (Repl.Pamp.1984)

In granting summary judgment in favor of the Blairs, the district court found that the highway in this case is unfenced. This determination was apparently based on the design plat introduced by the Department showing that fences were constructed along the highway consciously limiting Department fencing to certain portions of the highway. We think the district court construed the issue of whether the highway was fenced as factual and viewed the facts as undisputed. Having considered the relevant statutes as a whole, we believe the issue is a question of law, and that as a matter of policy we must construe the statutes differently than did the district court. We hold that the highway must therefore be characterized as fenced as a matter of law. We additionally hold that

there are factual issues that preclude summary judgment at this time.

The primary focus of Sections 30–8–13(B) and –14(A) is the responsibility of the Department with respect to livestock entering public highways. Section 30–8–13(B), in part, states:

The state highway department shall:

(1) unless it makes a fact determination that no livestock can enter the highway from a portion left unfenced, construct, inspect regularly and maintain fences along all highways ...; and

(2) post proper signs along all highways under its jurisdiction which are not fenced on both sides and which are located adjacent to property containing livestock....

Section 30–8–14(A) then states:

Notwithstanding the responsibility of the highway department under the provisions of Section 30–8–13 NMSA 1978 to construct, inspect regularly and maintain fences along all highways under its jurisdiction, the highway department may enter into an agreement with an owner or lessee of property adjoining a public highway to keep a specified section of the highway frontage unfenced for use as roadside business....

■ Thus, the Department has a duty to either construct fences along all public highways or, as an alternative to fencing, to afford protection to the motoring public in one of the following ways: (1) make a fact determination that no livestock can enter the highway through portions left unfenced under Section 30–8–13(B)(1); (2) place warning signs on unfenced highways under Section 30–8–13(B)(2); or (3) enter agreements with owners or lessees of property where that owner or lessee assumes full responsibility for constructing and maintaining livestock fencing to prevent livestock from entering the highway under Section 30–8–14(A) (hereinafter referred to as "protective measures").

■ During oral argument, the Department conceded that it made a conscious decision to erect fences along the highway, thus making this a fenced highway under Section 30–8–13(B). In fact, the Department in its brief stresses that this area was not "unfenced."

■ The Department also admits to consciously leaving gaps in the fences to allow access to roadside businesses and other establishments along the highway. The Department specifically maintains it also left the gap in the fence between the northeast corner of the pasture on Turner Ranch and the western portion of the airport runway by design. Thus, as an alternative to constructing a fence to fill the gap, the Department had a duty to protect the motoring public with one of the protective measures mentioned above.

■ The Department maintains that the reason for the large gap in the fence was to allow Turner Ranch to erect a perimeter fence around the airport runway. The Department further asserts that the owners of Turner Ranch agreed to construct and maintain livestock fencing on its own property.[1] There is a question of fact, however, on whether the Department actually secured an agreement from the owners to construct or maintain a fence. Regardless of the outcome of the factual issue on whether an agreement was ever made, we determine the highway is still considered a fenced area under Section 30–8–13(B).

### B. Immunity Under Section 41–4–11

The Department argues that, when the original design of a highway leaves gaps in a fence line, it is immune from liability under Section 41–4–11 for damages attributable to such gaps in the fence. The completion of this highway project in 1977 occurred after enactment of Sections 30–8–13 and –14; therefore, the highway design is governed by these two sections.

■ Under Sections 30–8–13 and –14, the highway could be designed with gaps in the fences, provided that the design also include coverage for the gaps by one of the protec-

---

1. At oral argument, a question arose as to the identity of the party or parties responsible for construction and maintaining the perimeter fence if an agreement is found to exist. We express no opinion regarding the identity of the party or parties.

tive measures discussed above. For purposes of this case only, we agree that the blueprint location of fences and protective measures in the original plan for the highway project are matters of design. Failure to comply with such design, however, could be a matter of maintenance. *See Moore v. State,* 95 N.M. 300, 302, 621 P.2d 517, 519 (Ct.App. 1980) (Andrews, J., specially concurring) (liability could be predicated on failure to construct a highway in accordance with design).

█ The question of whether the Department complied with its highway design necessarily involves questions of fact such as whether the Department secured an agreement from the property owners to construct or maintain fences, or alternatively whether the Department made a fact determination that livestock could not enter the highway. If the fact finder determines that the Department failed to comply with the design of the highway as governed by Sections 30–8–13 and –14, the lack of agreements or other protective measures would be considered maintenance, and the Department would not be entitled to immunity under Section 41–4–11. Because these questions of fact remain to be resolved, summary judgment in favor of the Department is precluded. *See Roth,* 113 N.M. at 335, 825 P.2d at 1245.

### C. Section 66–7–363(C)

Section 66–7–363(C) in part states:

> Owners of livestock ranging in pastures through which *unfenced* roads or highways pass shall not be liable for damages by reason of injury or damage to persons or property occasioned by collisions of vehicles using said roads and highways and livestock or animals ranging in said pastures unless such owner of livestock is guilty of specific negligence.... (Emphasis added.)

The focus of Section 66–7–363(C) is the duty of a livestock owner with respect to animals on a highway. Its application is limited to unfenced highways. The district court held that the highway at issue is unfenced, thus prompting applicability of Section 66–7–363(C). The district court then went on to hold that the Blairs as owners of the cow were not liable for damages caused by the

cow where no specific negligence was attributable to them under Section 66–7–363(C). *See Dean v. Biesecker,* 87 N.M. 389, 534 P.2d 481 (1975) (decided under old law).

█ As we indicated earlier, we believe the district court viewed the issue as factual and determined that there were no genuine issues of material fact precluding summary judgment. We believe, after reviewing the relevant statutes, that the issue is a question of law. We conclude that the highway in this case could not be categorized as an unfenced highway and, therefore, Section 66–7–363(C) does not apply. Thus, the decision granting summary judgment in favor of the Blairs on these grounds cannot stand.

The Blairs argue, however, that by enacting Section 66–7–363(C) and Sections 30–8–13 and –14, the legislature intended to protect livestock owners from liability. Although it is correct that the legislature clearly intended to place the burden of fencing public highways on the Department, the legislature did not make this absolute; instead, it allowed the Department an option to shift that burden to livestock owners by entering into agreements such as those outlined in Section 30–8–14.

█ On review of the whole record, several issues of fact concerning the Blairs' liability also remain. For example, one fact issue is whether an agreement existed between the Department and an owner or lessee of the adjoining property to construct and maintain a perimeter fence and whether that owner or lessee complied with that agreement. Another fact question concerns whether the cow escaped onto the highway through an area of fence maintained by the Department or by the Blairs. *See* note 1. Summary judgment in favor of the Blairs, therefore, is also precluded on the grounds that questions of material fact remain. *See Roth,* 113 N.M. at 335, 825 P.2d at 1245.

## II. MOTION FOR PARTIAL REMAND

Plaintiffs ask us to partially remand this case to the district court to allow consideration of a motion to amend the complaint to include an issue concerning the Department's apparent failure to post signs on the high-

way. In light of our discussion in this opinion, it is not certain whether this issue is applicable to the case. Nevertheless, should it become material, we determine that the original complaint which states, in part, "[t]he area in which Plaintiff [Madrid] was driving his vehicle is not marked "open range[,]' (sic)" "cattle crossing," or with any other warning sign concerning cattle," adequately states this issue with sufficient detail. *See Phifer v. Herbert,* 115 N.M. 135, 138–39, 848 P.2d 5, 8–9 (Ct.App.1993).

## CONCLUSION

In summary, we hold that the highway in question is a fenced highway governed by Sections 30–8–13 and –14. Accordingly, Section 66–7–363(C) does not apply to this case. This holding and our discussion of the disputed facts above preclude summary judgment in favor of either the Department or the Blairs. Consequently, the judgments granted in favor of the Blairs and the Department are reversed.

**IT IS SO ORDERED.**

MINZNER, C.J., and CHAVEZ, J., concur.