This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38382**

**DIANNE GARRITY, as Personal Representative of the ESTATE OF ADRIENNE TRUJILLO and ALBERT AND ALICIA TRUJILLO, individually and as Parents of Adrienne Trujillo,**

Plaintiffs-Appellants,

v.

**BOARD OF COUNTY COMMISSIONERS FOR QUAY COUNTY and QUAY COUNTY,**

Defendants-Appellees,

and

**DIEGO ZAMORA, as Wrongful Death Personal Representative of the ESTATE OF PADYN HUGHES, Deceased; and SUSAN HUGHES and KEVIN HUGHES, individually, and Parents and Next Friend of PADYN HUGHES, Deceased,**

Plaintiffs,

v.

**BOARD OF COUNTY COMMISSIONERS FOR QUAY COUNTY and QUAY COUNTY,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Abigail Aragon, District Judge**

Law Office of Daymon Ely

Daymon B. Ely
Albuquerque, NM

Dean Border
Albuquerque, NM

for Appellants

Brown Law Firm, Brown & Gurule LLC
Desiree D. Gurule
Rio Rancho, NM

Macke Law & Policy, LLC
Daniel J. Macke
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** In these consolidated wrongful death cases, Plaintiffs Dianne Garrity, who is the personal representative of the Estate of Adrienne Trujillo, and Albert and Alicia Trujillo, who are Adrienne Trujillo's parents, allege that Defendants, Quay County and its Board of County Commissioners (the County), negligently maintained a roadway, allowing cattle to enter a road and cause a rollover that killed two people. Plaintiffs appeal from an order granting the County's motion for summary judgment. Because we conclude that the County did not make a prima facie case of entitlement to summary judgment, we reverse and remand for further proceedings.

**DISCUSSION**

**{2}** We review the award of summary judgment de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. To prevail in opposing summary judgment, the party with the burden of persuasion on a claim "does not need to establish all elements of the claim." *Ridlington v. Contreras*, 2022-NMSC-002, ¶ 12, 501 P.3d 444 (internal quotation marks and citation omitted). "New Mexico courts . . . view summary judgment with disfavor, preferring a trial on the merits." *Romero*, 2010-NMSC-035, ¶ 8. "[W]hen the facts are insufficiently developed for determination of the central issues involved," summary judgment is improper. *Ridlington*, 2022-NMSC-002, ¶ 12 (internal quotation marks and citation omitted). In accord with these principles, we "view the facts in a light most favorable to the party opposing summary judgment and draw all reasonable

inferences in support of a trial on the merits." *Romero*, 2010-NMSC-035, ¶ 7 (internal quotation marks and citation omitted).

**{3}** Plaintiffs argue that the district court erred by granting the County's motion for summary judgment. We agree.

**{4}** In its motion for summary judgment, the County contended that it had no duty to maintain two cattle guards adjoining State Road 469 near the site of the accident because it neither installed nor maintained either guard, as evidenced by the affidavits of county manager Richard Primrose and county road superintendent Larry Moore along with deposition testimony of Mr. Moore. Mr. Moore testified that the accident occurred near the intersection of Quay County Road T and State Road 469 and that the two cattle guards closest to the accident were maintained by the State Highway Department, not the County. Plaintiffs made no attempt to rebut this evidence, and we therefore conclude that the district court was correct in ruling that, as a matter of law, the County did not have a duty to maintain either of the two cattle guards that the County identified as places where a cow could have entered the state road. *See id.* ¶ 10 (explaining that, once the movant has made a prima facie case for summary judgment, "the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits" (internal quotation marks and citation omitted)); *cf. Bierner v. City of Truth or Consequences*, 2004-NMCA-093, ¶ 12, 136 N.M. 197, 96 P.3d 322 (concluding that the defendant city made a prima facie case for summary judgment by adducing evidence, consistent with its position that it had no duty to maintain a state road, that the road was built and maintained by the state and that the city did not own the road and had no role in its construction or maintenance).

**{5}** However, Plaintiffs' response to the County's motion included evidence that raised a different theory of liability: that the County had a duty to maintain other cattle guards, on a county road, approximately four miles from where the accident took place on State Road 469 and that the County breached that duty, allowing a cow owned by Dusty Stone to reach the site of the accident and cause the accident.[1] In support of this theory, Plaintiffs presented Mr. Stone's deposition testimony that, on his return from a trip out of town, he discovered that gates between his fencing and adjacent cattle guards were in a position that allowed cattle to leave his property and that a cow and a calf were missing from his herd. It was undisputed that these cattle guards and adjacent gates, which we refer to as cattle guards for brevity, were on Quay County roads. Mr. Stone testified that the gates had been in a different position when he left town and that, although he did not know who moved them, county officials were the only people he had ever seen do so in the past. And Mr. Stone testified that, the day after his return, he found the missing cow in the general area of the accident and that it was of a breed that his neighbors did not own.

---

[1]The County argues that, because Plaintiffs did not specifically controvert the material facts recited in its motion for summary judgment, those facts must be "deemed admitted" pursuant to Rule 1-056(D)(2). Even if the County is correct, those facts do not speak to Plaintiffs' theory that the accident resulted from the County's negligent maintenance of cattle guards on its own road.

**{6}**     Plaintiffs argued that Mr. Stone's testimony raised a question as to whether "the County was negligent in its maintenance of the cattle guard or adjoining fences, and, as a result of that negligence, a cow was let loose on a [c]ounty road which eventually [led] to a [s]tate road." We recognize that Plaintiffs did not file an initial response to the County's motion for summary judgment and instead, beyond the fifteen days for filing a response prescribed by Rule 1-056(D)(2), moved, under Rule 1-056(F), for additional time to conduct discovery. Plaintiffs did not raise their ultimate theory until the hearing on the motion and in the latter of two supplemental responses. But the district court allowed Plaintiffs to present their new theory despite their defective pleading, and the County had the final word on the theory in its surreply in which it argued that, under NMSA 1978, Section 30-8-13(C) (1967, repealed 2018), "it had no duty to prevent Mr. Stone's cattle from entering public roadways." In our view, this legal argument did not establish a prima facie case of entitlement to judgment on Plaintiffs' ultimate theory of liability because the County may have owed a duty to the decedents even if it did not have a statutory duty to fence the county road in question.[2] *See* NMSA 1978, § 41-4-2(B) (1976) (providing that liability under the Tort Claims Act "shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty"); *Rutherford v. Chaves Cnty.*, 2002-NMCA-059, ¶ 12, 132 N.M. 289, 47 P.3d 448 (recognizing that counties have a common-law duty to maintain roads under their jurisdiction), *aff'd*, 2003-NMSC-010, 133 N.M. 756, 69 P.3d 1199; *Martinez v. N.M. Dep't of Transp.*, 2013-NMSC-005, ¶ 26, 296 P.3d 468 (explaining that "[t]he duty to maintain a roadway subsumes within it a duty to remediate a known, dangerous condition"); *Bober v. N.M. State Fair*, 1991-NMSC-031, ¶¶ 12-16, 111 N.M. 644, 808 P.2d 614 (recognizing that a landowner's duty to avoid creating or permitting an unreasonable risk of harm extends to some harms that might occur outside of the landowner's property).

**{7}**     The County argues that we should affirm the district court's decision to grant its motion for summary judgment because, under the summary judgment evidence, the County is immune from liability. Although governmental entities are generally immune from tort liability, NMSA 1978, § 41-4-4(A) (2001), a waiver of immunity exists for negligence in the construction or maintenance of a roadway by public employees acting within the scope of their duties. NMSA 1978, § 41-4-11(A) (1991, amended 2019). The parties litigated the applicability of that waiver during summary judgment proceedings,

---

[2]The record does not reveal why the district court concluded that summary judgment was warranted as to Plaintiffs' ultimate theory of liability. The strength of Mr. Stone's testimony has no bearing on whether the County carried its burden of making a prima facie case as to Plaintiffs' ultimate theory, and, in any event, "[a] court reviewing a summary judgment motion may not weigh the evidence or pass on the credibility of the witnesses." *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 22, 135 N.M. 539, 91 P.3d 58. Because we reverse on the basis of the County's failure to make a prima facie case, we need not reach the County's argument that Mr. Stone's deposition testimony was a "sham affidavit." For the same reason, we may reverse without addressing the merits of the County's argument that, given the injunction it obtained against Mr. Stone in a separate case, Mr. Stone should be collaterally estopped from giving testimony in this case. However, because the County might make the collateral estoppel argument again on remand, we reject that argument on the ground that collateral estoppel does not bar witnesses from testifying *See Silva v. State*, 1987-NMSC-107, ¶ 11, 106 N.M. 472, 745 P.2d 380 (explaining that the doctrine of defensive collateral estoppel applies "when a defendant seeks to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost").

but the district court did not rule on the issue. On appeal, the County asks us to infer, from its lack of a duty to maintain the cattle guards nearest the site of the accident, that the waiver of immunity for negligent roadway maintenance does not apply here. But, *if* Plaintiffs prove their theory that the County breached a duty to exercise ordinary care in its maintenance—rather than its planning or design, *see* § 41-4-11(B)—of cattle guards on its own roads and that such a breach proximately caused the accident, the waiver of governmental immunity for negligent roadway maintenance could apply. *Cf. Madrid v. N.M. State Highway Dep't*, 1994-NMCA-006, ¶¶ 10, 14-16, 117 N.M. 171, 870 P.2d 133 (explaining that, if the state deviated from design in constructing a road, a failure to take adequate measures to prevent livestock from entering the road would expose the state to liability for negligent maintenance of a road under Section 41-4-11(A)); *Fireman's Fund Ins. Co. v. Tucker*, 1980-NMCA-082, ¶ 13, 95 N.M. 56, 618 P.2d 894 (explaining that, where the state had a duty to "construct[] and maintain[] fences when necessary along public highways, the waiver of sovereign immunity for negligence in the maintenance of highways include[d] negligence in the maintenance of those fences" because "[m]aintaining the highway means keeping it safe for public use"); *Martinez*, 2013-NMSC-005, ¶ 34 (reasoning that, whenever the state has notice of a dangerous condition on one of its roads, it has a "maintenance obligation for which [it] can be held legally responsible under [Section 41-4-11(A)]" in the case of breach, regardless of whether "the original design or some other intervening characteristic" caused the dangerous condition). Ultimately, because the facts are not yet developed, we decline the County's invitation to hold, at this stage of the litigation, that the County is immune from liability. *See Ridlington*, 2022-NMSC-002, ¶ 12.

**{8}**     We hold that the County failed to make a prima facie case of entitlement to judgment on Plaintiffs' claim that the County was negligent in its maintenance of cattle guards on its own roads, and, therefore, the County was not entitled to summary judgment.

**CONCLUSION**

**{9}**     We reverse and remand for further proceedings including additional summary judgment litigation, if appropriate following more development of the facts relevant to Plaintiffs' theory of liability.

**{10}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**GERALD E. BACA, Judge**