858 P.2d 867

Palmyra GALLEGOS, personally and as Mother and Next Friend of Martha Gallegos, a Minor, and Delfido Gallegos, Plaintiffs–Appellants,

v.

SCHOOL DISTRICT OF WEST VEGAS, NEW MEXICO, Edmundo Martinez, and Ignacio Lovato, Defendants–Appellees,

and

State of New Mexico Board of Education, School Transportation Division of the State of New Mexico Board of Education, New Mexico State Highway Department, Board of Commissioners of the County of San Miguel, New Mexico State Police, and San Miguel County Sheriff's Department, Defendants.

No. 13382.

Court of Appeals of New Mexico.

July 12, 1993.

Certiorari Denied Aug. 19, 1993.

Elliot L. Weinreb, James E. Thomson, Santa Fe, for plaintiffs-appellants.

Gregory L. Biehler, M. Anne Wood, Beall & Biehler, P.A., Albuquerque, for defendants-appellees.

## OPINION

PICKARD, Judge.

Plaintiffs appeal the district court's order granting Defendants School District of West Las Vegas, Edmundo Martinez, and Ignacio Lovato summary judgment in this Torts Claims Act (the Act) case. Plaintiffs filed suit under the Act, NMSA 1978, §§ 41-4-1 to -27 (Repl.Pamp.1989), for damages resulting from an accident on January 10, 1989, in which Plaintiffs' daughter, Martha, was hit by a vehicle while she was crossing State Road 3 to be picked up by a school bus. Defendant Lovato was the driver of the school bus that Martha was attempting to meet. Lovato (Driver), the School District (School), and Martinez, the School's transportation director, (collectively, Defendants) moved for summary judgment, maintaining that they were entitled to immunity under the provisions of the Act. Plaintiffs responded by arguing that immunity had been waived because these Defendants negligently operated the school bus and negligently maintained State Road 3. See §§ 41-4-5 and -11. The district court granted the motion for summary judgment, and Plaintiffs appeal. The motion for summary judgment was not joined in by the other defendants in this case, and they are not part of this appeal.

### FACTS

In reviewing the summary judgment granted to Defendants, we look at the whole record and view the matter presented in the light most favorable to Plaintiffs. See Cunningham v. Gross, 102 N.M. 723, 725, 699 P.2d 1075, 1077 (1985). Affidavits submitted in this case alleged the following facts: (1) Prior to the accident, Driver made a practice of traveling up State Road 3 without picking up any children; (2) Driver would turn around at Sena and pick up all the children on his way back down the road; (3) Driver wanted the children to be waiting for him when he arrived at the bus stop, and he never instructed them to wait until the school bus was at the stop to cross the road; (4) Defendant Martinez provided route instructions, locations of stops, and information concerning procedures to Driver; and (5) while Martha was crossing State Road 3 to catch the school bus, before the bus actually arrived at the stop, she was hit by a vehicle and injured.

### DISCUSSION

#### Negligent Maintenance of Highway

Plaintiffs contend that Defendants negligently maintained State Road 3 by locating the school bus stop in such a way that Martha was required to cross the road to reach the stop. Defendants argued below, and the trial court held, that the act of locating a school bus stop is part of the design or plan of a road, for which immunity is not waived under the Act. See § 41-4-11(B)(1). However, Defendants presented no evidence that concerned the design of State Road 3 or tended to show that the location of this particular school bus stop was indeed part of the design or plan of the road. Absent such evidence, the trial court could not determine whether the location of this particular school bus stop was indeed part of the design of the road. See Romero v. State, 112 N.M. 332, 333–34, 815 P.2d 628, 629–30 (1991) (state has burden of producing evidence of plan or design of highway in order to show entitlement to "design" exception to statutory waiver of immunity).

To the extent that Defendants would have us hold as a matter of law that the location of a school bus stop on a road is an act of design, rather than maintenance, we decline to do so. Our Supreme Court has indicated that the question of whether an action is one of design or not is fact-based. See id.

The placement of a school bus stop involves elements of traffic control, both pedestrian and vehicular, that are quite similar to the placement of traffic lights or other controls on a road. New Mexico courts have held that the placement of such controls, or the lack thereof, constitutes maintenance of the road under the Act. *See Grano v. Roadrunner Trucking, Inc.,* 99 N.M. 227, 228, 656 P.2d 890, 891 (Ct.App.1982), *cert. quashed,* 99 N.M. 358, 658 P.2d 433 (1983); *see also Miller v. New Mexico Dep't of Transp.,* 106 N.M. 253, 255, 741 P.2d 1374, 1376 (1987) (citing *Grano* with approval). A school bus stop determines where oncoming and following traffic will be required to slow down or stop to wait for loading or unloading of the bus. The stop also establishes locations where pedestrian traffic will be present, requiring greater care on the part of motorists. This traffic control aspect of the decision to locate a bus stop at a particular place puts the decision in the category of maintenance of a road, unless there are specific facts showing that the bus stop location was part of the plan or design of the road. *Cf. Miller,* 106 N.M. at 255, 741 P.2d at 1376 (decision to issue oversize vehicle permits is act of maintenance because it could create unsafe condition on highway); *Grano,* 99 N.M. at 228, 656 P.2d at 891 (absence of traffic control device at intersection was issue of maintenance); *Romero,* 112 N.M. at 334, 815 P.2d at 630 (question of whether condition of road was matter of design or maintenance required evidence of design or plan of road). The fact that the location of the bus stop has more to do with the safety of pedestrians using the roadway than the safety of drivers is not, in our view, material under our precedents.

Based on the foregoing, we hold that Defendants failed to establish entitlement to summary judgment on the negligent maintenance issue because they did not produce undisputed evidence that would show that the location of this particular bus stop was part of the design or plan of State Road 3.

*Negligent Operation of the School Bus*

Plaintiffs claim that Driver negligently operated the school bus in two ways. First, they maintain that his day-to-day practice of refusing to pick up Martha on her side of the road, thus forcing her to cross the road to wait for his return trip, was negligent operation of the vehicle. Second, they claim that Driver's failure to instruct Martha to wait until the school bus arrived at the stop and had its lights flashing to cross the road was negligent operation of the bus. Defendants, on the other hand, argue that Driver was nowhere near the scene of the accident when it occurred, so he could not have been operating the bus in a manner that caused the accident. In addition, Defendants contend that Driver's alleged failure to instruct Martha properly concerning safe procedures is not "operation" of a vehicle as defined in the Act.

Operation of a school bus, under the Act, has been construed to include making decisions, while driving the bus, about whether to stop the vehicle on the pavement, with lights flashing, or off the road. *Chee Owens v. Leavitts Freight Serv.,* 106 N.M. 512, 515, 745 P.2d 1165, 1168 (Ct.App.1987). Similarly, Driver in this case allegedly decided, while driving the bus each day, not to pick up Martha on her side of State Road 3 but to pick her up on the opposite side on his return trip. That decision constituted operation of the bus—it occurred while Driver was in control of the bus, and it affected the manner in which Driver performed his driving duties. *See id.*

Although we read *Chee Owens* as holding that "the designation of bus stops did not constitute 'operating a motor vehicle[,]'" *id.* at 514, 745 P.2d at 1167, Plaintiffs do not seek recovery from the School or Martinez on that ground; their claim against those two Defendants is based on derivative liability arising from the alleged negligent operation of the bus by Lovato. Although Driver ordinarily would not be negligent for stopping only at bus stops prescribed by superiors, *see id.* at 516, 745 P.2d at 1169, the facts in this regard are not undisputed.

■ The fact that the decision about where to pick up Martha did not produce immediate results, so that the bus was not in the area when the accident occurred, does not affect the question of whether the decision constituted operation of the bus. If the bus was negligently operated, and that negligence created a dangerous condition that produced harm at a later time, Driver is not shielded from liability by the fact that his bus was not at the scene at the time of the accident. *See Calkins v. Cox Estates*, 110 N.M. 59, 61, 66, 792 P.2d 36, 38, 43 (1990) (landlord's liability was jury question when child exited fence allegedly negligently maintained by landlord, traveled 900 feet, and was struck by vehicle); *Lopez v. Maez*, 98 N.M. 625, 632, 651 P.2d 1269, 1276 (1982) (person who negligently creates dangerous condition cannot escape liability for natural and probable consequences thereof, even if act of third person contributes to final result).

■ Driver in this case allegedly created a dangerous condition by making it a regular practice to require Martha to cross the road to meet his bus and to be at the stop when he arrived. That regular practice, as we have stated, constituted operation of the bus, whether or not the consequences of the practice occurred while the bus was present. It is up to the fact-finder, of course, to determine whether the accident suffered by Martha was a reasonably foreseeable consequence of Driver's operation of the bus. *See Calkins*, 110 N.M. at 65 & n. 6, 792 P.2d at 42 & n. 6.

Due to our disposition of the foregoing issue, we need not determine whether Plaintiffs have, at this time, made a sufficient evidentiary showing that Defendants' failure to properly instruct Martha concerning safety was part of the process of operating the school bus.

CONCLUSION

In accordance with the above discussion, we reverse the summary judgment granted to Defendants with respect to both the negligent maintenance claim and the negligent operation claim. This case is remanded to the district court for further proceedings.

IT IS SO ORDERED.

APODACA and HARTZ, JJ., concur.

HARTZ, Judge.

I join fully in Judge Pickard's opinion. I write only to emphasize the date on which the cause of action accrued in this case and to comment on the statement in Defendants' Answer Brief that "[o]ne must stretch the term 'maintenance' beyond recognition to find that a bus stop placement on a road falls under the definition."

In an opinion interpreting NMSA 1978, Section 41–4–11(A), Judge Sutin wrote, "Maintenance of a highway means the upkeep of the surface of the highway." *Grano v. Roadrunner Trucking*, 99 N.M. 227, 229, 656 P.2d 890, 892 (Ct.App.1982) (Sutin, J., specially concurring), *cert. quashed*, 99 N.M. 358, 658 P.2d 433 (1983). New Mexico case law has strayed some distance from that construction of the statutory language. Yet, whatever our view of that case law, we should be particularly mindful of the doctrine of stare decisis in matters of statutory interpretation. The opinion in this case is a necessary consequence of our precedents.

When the legislature demonstrates discontent with judicial construction of its enactments, however, it is time for the courts to reconsider their precedents. In 1991 the New Mexico legislature added a provision to the Tort Claims Act stating that the term "maintenance" does not include "conduct involved in the issuance of a permit, driver's license or other official authorization to use the roads or highways of the state in a particular manner[.]" NMSA 1978, § 41–4–3(E) (Cum.Supp.1992). This amendment repudiated *Miller v. New Mexico Department of Transportation*, 106 N.M. 253, 741 P.2d 1374 (1987), which was our Supreme Court's most expansive interpretation of the term "maintenance" in the Tort Claims Act. Regardless of what the legislature originally intended when it enacted Section 41–4–11, the intent of the 1991 legislature was certainly that "main-

tenance" not be interpreted as broadly as it had been in the state's appellate decisions. *See Smith v. United States,* —— U.S. ——, ——, 113 S.Ct. 2050, 2058, 124 L.Ed.2d 138 (June 1, 1993) (amendment to statute, which did not redefine the word "use," made clear that the amending Congress intended a broad meaning for the word, even if the Congress that originally passed the provision had intended a more limited scope).

Thus, I am not confident that the meaning of "maintenance" in the present statute would encompass placement of a bus stop. Nevertheless, because the cause of action in this case arose in 1989, before the effective date of the 1991 amendment to the Tort Claims Act, it is unnecessary to decide that issue.