2003-NMSC-010

69 P.3d 1199

David RUTHERFORD, as personal representative of the Estate of Rhonda Adele Rutherford, deceased, David Rutherford and Bobbie Flenniken, individually and as co-personal representatives of the Estates of Taletha Jean Rutherford, deceased, and Joseph Thornton Rutherford, deceased; John Rutherford, and Michael and Debra Thomas, individually and as co-personal representatives of the Estate of Donovan J. Thomas, deceased, Plaintiffs–Respondents,

v.

CHAVES COUNTY and Board of County Commissioners of Chaves County, Defendants–Petitioners.

No. 27,487.

Supreme Court of New Mexico.

April 23, 2003.

Miller, Stratvert & Torgerson, P.A., Gary L. Gordon, James R. Wood, Alice Tomlinson Lorenz, Albuquerque, NM, for Petitioners.

Fine & Faure, Donald E. Martinez, Joseph M. Fine, Albuquerque, NM, for Respondents.

## OPINION

CHAVEZ, Justice.

{1} Plaintiffs filed a complaint against Defendants Chaves County and the Chaves County Board of Commissioners under the New Mexico Tort Claims Act for wrongful death and personal injury following a nighttime accident that occurred at a flooded roadway intersection where Plaintiff Rutherford unsuccessfully attempted to drive his motor vehicle through the arroyo floodwaters. The district court granted Chaves County's motion for summary judgment, finding Chaves County immune from suit under the Tort Claims Act. On appeal, the Court of Appeals reversed the district court and held that the Tort Claims Act waived Chaves County's immunity from suit because Chaves County's allegedly negligent acts of failing to timely and adequately control traffic on the flooded roadway constitute highway maintenance. We affirm the Court of Appeals and remand for further proceedings consistent with this opinion.

## THE FACTS

{2} This case arises out of an accident that occurred on a flooded road in Chaves County, New Mexico. Spence Road is a short local access road that intersects Walnut Creek, a normally dry arroyo. Walnut Creek crosses Spence Road through a dip in the roadway (Spence Road Crossing). Both sides of the Spence Road Crossing display signs, alerting oncoming motorists to "WATCH FOR WATER" and to warn them of the "DIP" when approaching the intersection. In the past it had been customary for the Chaves County Road Department (Road Department) to close the Spence Road Crossing using portable barricades when floodwaters reached dangerous levels. When Walnut Creek floods, the waters run in a deceptively rapid, deep fashion.

{3} On the night of July 14, 1996, John Rutherford was driving home on Spence Road with his wife, their two children, and another child. Although it had not rained that day, water from the nearby mountains and flood plains had drained into Walnut Creek, causing the arroyo to flood the Spence Road Crossing. Sometime before 9:00 p.m., Mr. Rutherford attempted to navigate his motor vehicle through the flooded Spence Road Crossing. He, however, quickly lost control of his vehicle, and rapidly running water carried the vehicle and its occupants downstream. Mr. Rutherford escaped the sinking vehicle, but his wife and the children drowned.

{4} A half hour earlier that night, the Chaves County Sheriff's Department (Sheriff's Department) received information that Walnut Creek was flooding and the floodwaters at the Spence Road Crossing were running at dangerously high levels. An officer with the Sheriff's Department contacted an employee of the Road Department about the flooding. The employee, who lived approximately thirty miles from the Spence Road Crossing, went to the Road Department yard to get the portable barricades needed to close Spence Road. By the time the Chaves County employee arrived at the Spence Road Crossing with the portable barricades, the accident had already occurred.

## PROCEDURAL HISTORY

{5} John Rutherford and the personal representatives of the decedents' estates (Rutherford) sued Chaves County and the Chaves County Board of Commissioners (Chaves County) for personal injury and wrongful death based on the accident at the Spence Road Crossing. Rutherford alleged that Chaves County was negligent in its maintenance of the roadway because it did not have a reasonable system in place to identify the flooding hazard and close the Spence Road Crossing in a timely manner. The district court granted summary judgment to Chaves County, finding that Chaves County was immune from suit under the New Mexico Tort Claims Act (TCA) because the negligence of public employees in maintaining a roadway, as waived in NMSA 1978, § 41-4-11 (1991), did not include the negligent acts Rutherford alleged.

{6} Rutherford appealed to the Court of Appeals based on the sovereign immunity issue, alleging that Chaves County negligently maintained its roadways by not adequately and timely responding to the problem of arroyo flooding because Chaves County relied on a reactive system which failed to include sufficient and effective safeguards to adequately control traffic at the Spence Road Crossing. The Court of Appeals agreed with Rutherford, reversed the district court, and held that Chaves County was not immune under the TCA because placement of barricades at the Spence Road Crossing before the arroyo floodwaters reached dangerous levels constituted maintenance such that sovereign immunity is waived.

{7} We granted Chaves County's petition for writ of certiorari. We affirm the Court of Appeals and hold that procedures for identifying hazards on roadways and the timeliness of minimizing or eliminating the risk of injury to the motoring public from those hazards constitute maintenance activities for which immunity is waived under the TCA.

## DISCUSSION

### A. Standard of Review

■ {8} Chaves County filed a motion for summary judgment on the basis that its alleged negligence in this case is not subject to the waiver of immunity contained in the TCA. Chaves County disputes the standard of review articulated by the Court of Appeals, particularly the court's statement that a grant of summary judgment should be reviewed in the light most favorable to the party opposing summary judgment. We agree with Chaves County that, in a case where a pure question of law is at issue, we will not review a grant of summary judgment in the light most favorable to the party opposing the motion. The standard of review for determining whether governmental immunity under the TCA bars a tort claim is a question of law which we review de novo. *Godwin v. Mem'l Med. Ctr.*, 2001-NMCA-033, ¶ 23, 130 N.M. 434, 25 P.3d 273; *see In re Estate of Armijo*, 2000-NMCA-008, ¶ 5, 128 N.M. 565, 995 P.2d 487 (holding that construction of a statute is a matter of law), *rev'd on other grounds*, 2001-NMSC-027, 130 N.M. 714, 31 P.3d 372; *Bd. of Comm'rs v. Greacen*, 2000-NMSC-016, ¶ 4, 129 N.M. 177, 3 P.3d 672 (holding that statutory construction concerns are pure questions of law, subject to de novo review).

### B. Applicability of the Tort Claims Act

■ {9} The parties agree that, once Chaves County had notice of the flood conditions, the placement of portable barricades was appropriate. The placement of portable barricades is a method of traffic control under the Manual of Uniform Traffic Control

Devices which must be followed by local authorities. NMSA 1978, § 66–7–103 (1978). We have repeatedly held and reiterate in this opinion that traffic controls constitute maintenance activities under the TCA. *Lerma v. State Highway Dep't*, 117 N.M. 782, 784, 877 P.2d 1085, 1087 (1994); *Pollock v. State Highway & Transp. Dep't*, 1999–NMCA–083, ¶ 10, 127 N.M. 521, 984 P.2d 768; *Ryan v. State Highway & Transp. Dep't*, 1998–NMCA–116, ¶ 12, 125 N.M. 588, 964 P.2d 149; *Grano v. Roadrunner Trucking, Inc.*, 99 N.M. 227, 228, 656 P.2d 890, 891 (Ct.App.1982).

{10} The issue in this case centers on the procedures used by Chaves County for identifying a flood hazard and responding to that hazard in a timely manner so as to prevent injury or death to the motoring public. The relevant provision of the TCA is Section 41–4–11, which permits a cause of action for damages caused by "the negligence of public employees while acting within the scope of their duties during the construction, and in subsequent maintenance of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area." Section 41–4–11(A). However, immunity is not waived if the damages are caused by "a defect in plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk, or parking area." Section 41–4–11(B)(1). Nor is immunity waived if the damages are caused by the failure to construct or reconstruct a bridge, culvert or roadway. Section 41–4–11(B)(2).

■ {11} Statutory provisions purporting to waive governmental immunity are strictly construed. *See Armijo v. Dep't of Health & Env't*, 108 N.M. 616, 617, 775 P.2d 1333, 1334 (Ct.App.1989) (stating that the TCA extends immunity for tort liability to governmental entities, except where immunity is waived under Sections 41–4–5 to 41–4–12 of the Act). In interpreting the meaning of a statute, our primary purpose is to give effect to the Legislature's intent. *Cal. First Bank v. State Dep't of Alcohol Beverage Control*, 111 N.M. 64, 68, 801 P.2d 646, 650 (1990); *Gutierrez v. J & B Mobile Homes*, 1999–NMCA–007, ¶ 7, 126 N.M. 494, 971 P.2d 1284. Section 41–4–11 must be construed to effectuate its remedial purpose of ensuring that highways are made safe and kept safe for the traveling public. *See Fireman's Fund Ins. Co. v. Tucker*, 95 N.M. 56, 59, 618 P.2d 894, 897 (Ct.App.1980) ("[T]he New Mexico Legislature intended to protect the general public from injury by imposing liability upon governmental agencies when they fail to maintain safe public highways.").

■ {12} Chaves County has the common law duty to exercise ordinary care to protect the general public from foreseeable harm on its roadways. *See Lerma*, 117 N.M. at 784, 877 P.2d at 1087 ("[T]he [State Highway] Department has always had the common-law duty to exercise ordinary care to protect the general public from foreseeable harm on the highways of the state."); *accord Pollock*, 1999–NMCA–083, ¶ 10, 127 N.M. 521, 984 P.2d 768; *Villanueva v. City of Tucumcari*, 1998–NMCA–138, ¶ 3, 125 N.M. 762, 965 P.2d 346; *Ryan*, 1998–NMCA–116, ¶ 12, 125 N.M. 588, 964 P.2d 149. The identification of hazards on roadways is essential if governmental entities are to fulfill their responsibilities of keeping the highways safe for the motoring public.

{13} In the context of this established duty of care, issues often arise about whether the hazard sought to be remedied was foreseeable. *See Ryan*, 1998–NMCA–116, ¶ 14, 125 N.M. 588, 964 P.2d 149 (holding that the State Highway Department's duty to remedy the danger of elk crossing the highway was contingent on a jury finding that the Department had notice of the danger); *Bober v. N.M. State Fair*, 111 N.M. 644, 650, 808 P.2d 614, 620 (1991) (stating that "a determination of what a reasonably prudent person would foresee . . . is a factual determination, or perhaps, a mixed determination of law and fact"); *Calkins v. Cox Estates*, 110 N.M. 59, 61, 792 P.2d 36, 38 (1990) (holding that foreseeability is a question of law under the rubric of duty, but a question of fact under the rubric of proximate cause).

■ {14} Judge Sutin, in his dissent in the Court of Appeals opinion below, expresses concern about the floodwater hazard not being a static condition, but rather an infrequent and intermittent condition, which does not lend itself to a static remedy. *Ruther-*

*ford v. Chaves County,* 2002–NMCA–059, ¶ 43, 132 N.M. 289, 47 P.3d 448. The issue in this case is not only the remediation of a hazard, but the timely identification of a hazard. The remediation of a hazard—whether by installing proper traffic signals due to increased traffic flow, *Rickerson v. State,* 94 N.M. 473, 476, 612 P.2d 703, 706 (Ct.App. 1980), maintaining a fence to prevent children from crossing an urban freeway, *Lerma,* 117 N.M. at 784, 877 P.2d at 1087, or warning the public of migrating animals, *Ryan,* 1998–NMCA–116, ¶ 6, 125 N.M. 588, 964 P.2d 149—requires the identification of the hazard in the first place. It is not enough for a plaintiff to simply prove that the hazard exists; the plaintiff must prove that the governmental entity had actual or constructive notice of the hazard when the governmental entity did not create the hazard. *Id.* ¶ 7.

{15} As Judge Fry, writing for the Majority, aptly noted: "The concept of highway maintenance must have some fluidity in accordance with what the government knows or should know about dangerous highway conditions." *Rutherford,* 2002–NMCA–059, ¶ 20, 132 N.M. 289, 47 P.3d 448. The location of the school bus stop in *Gallegos v. School District of West Las Vegas,* 115 N.M. 779, 858 P.2d 867 (Ct.App.1993), and the placement of elk warning signs in *Ryan,* were remedies that may need to be changed as governmental entities learn or should learn about changes in the needs of school children or in the movement of elk. *Id.* Chaves County does not dispute that it was aware that floodwaters at the Spence Road Crossing would occasionally run at dangerously high levels. In the past, when it identified dangerously high floodwaters, Chaves County placed temporary portable barricades to deter access through the flooded intersection. The question remains whether, with this knowledge, the governmental entity exercised ordinary care and whether ordinary care would include developing a system to identify the floodwater hazard so that it could have responded in a reasonable period of time. Whether a governmental entity exercises ordinary care in the identification of the hazard is a question of fact for the jury.

{16} Chaves County argues that its system for identifying hazards on the roadway—in this case, dangerous floodwaters at an intersecting arroyo—is not reviewable as a "maintenance" activity under the TCA for two reasons. One reason is that such activities constitute "operations" which are not activities for which immunity is waived under Section 41–4–11. The second reason is that the 1991 legislative amendment restricts the meaning of "maintenance" to exclude the activities complained of by Rutherford. We disagree.

{17} To support its argument that a system for identifying hazards is "operation" of a roadway, Chaves County compares Section 41–4–11, which mentions only "maintenance," with other sections of the TCA which mention both "operation" and "maintenance." For example, the Legislature specifically included the word "operations" with "maintenance" in NMSA 1978, § 41–4–6 (1977). However, Section 41–4–6 deals with immunity as it relates to buildings, public parks, machinery, equipment, and furnishings. As such, it was important for the Legislature to use the words "operations or maintenance" because buildings and public parks are maintained, but machinery and equipment are both maintained and operated. There is no genuine distinction between "operations" and "maintenance" as those two words apply to roadways because roads are not operated in the way motor vehicles, hospitals, prisons, and public swimming pools are operated. *See Armijo,* 108 N.M. at 618, 775 P.2d at 1335 (noting a narrow interpretation of the word "operations"); *see also Chee Owens v. Leavitts Freight Serv., Inc.,* 106 N.M. 512, 514, 745 P.2d 1165, 1167 (Ct.App.1987) (defining "operation" of a motor vehicle as "physical operation involving manipulation of a vehicle's controls to propel the vehicle") (internal quotation marks and quoted authority omitted). Therefore, we decline Chaves County's invitation to read a lesser waiver of immunity into Section 41–4–11 simply because of the lack of the word "operations."

{18} Chaves County's second argument is for a more restrictive interpretation of "maintenance" because of the 1991 legislative amendment to the TCA which added a

definition of "maintenance." Specifically, Chaves County urges the Court to disregard those cases construing "maintenance" to include the absence of or inadequate traffic controls that were decided before the 1991 amendment. To address the argument made by Chaves County, we look to the history and background of the meaning of the phrase "subsequent maintenance of any . . . highway" contained in Section 41–4–11(A).

{19} In 1991, the Legislature changed the language of Section 41–4–11 from waiving immunity for the negligence of public employees "in the maintenance of or the existence of any . . . highway, roadway . . . ." to "construction, and in subsequent maintenance of any . . . highway, roadway." *Compare* 1977 N.M. Laws, ch. 386, § 8 *with* 1991 N.M. Laws, ch. 205, § 2. The Legislature also amended the TCA to add a definition of "maintenance" specifying that maintenance does not include "conduct involved in the issuance of a permit, driver's license or other official authorization to use the roads or highways of the state in a particular manner." NMSA 1978, § 41–4–3(E) (1995). We analyze this amendment by considering what the Legislature understood the law to be at the time of the amendment. *See State ex. rel. State Engineer v. Lewis*, 121 N.M. 323, 326, 910 P.2d 957, 960 (Ct.App.1995) ("We must interpret the language of a statute as the [L]egislature understood it at the time it was enacted.").

{20} Before 1991, our courts analyzed Section 41–4–11 on numerous occasions to determine what activities have and have not constituted highway maintenance under the TCA. The Court of Appeals in several cases held that maintenance included inadequate traffic controls. *See Grano*, 99 N.M. at 228, 656 P.2d at 891 (holding that the absence of traffic controls is a condition of a highway, and, therefore, the subject of "maintenance"); *see also Blackburn v. State*, 98 N.M. 34, 36, 644 P.2d 548, 550 (Ct.App.1982) (holding that there is no immunity against claims of inadequate signs and signals); *Rickerson*, 94 N.M. at 476, 612 P.2d at 706 (finding waiver of immunity where plaintiff alleged that "additional traffic-control equipment should have

been maintained" at a dangerous intersection).

{21} With this backdrop of case law defining maintenance, the 1991 legislative amendment specifically repudiated our decision in *Miller v. State Department of Transportation*, 106 N.M. 253, 255, 741 P.2d 1374, 1376 (1987) where we construed "maintenance" such that the issuance of oversize vehicle permits for transport of a mobile home over a winding road on a busy holiday weekend fit within the statutory waiver of immunity under the TCA. *See* 1991 N.M. Laws, ch. 205, § 1. While "[a]doption of statutory amendments is presumptive evidence of a legislative intention to change existing law, including existing judicial interpretations of the original statute," *Dunn v. State ex rel. Taxation & Revenue Dep't*, 116 N.M. 1, 5–6, 859 P.2d 469, 473–74 (Ct.App.1993), the legislative amendment was narrow, calculated, and addressed the particular legal conclusion in *Miller*. In 1991, when considering the definition of "maintenance," the Legislature chose not to limit the meaning of the term "maintenance" to "upkeep and repair." Notably, the Legislature also did not define maintenance to exclude traffic control.

{22} In cases decided after the 1991 amendment, both this Court and the Court of Appeals have continued to view traffic controls as maintenance. *See Lerma*, 117 N.M. at 784, 877 P.2d at 1087 (failure to build or maintain fences along highway); *Pollock*, 1999–NMCA–083, ¶ 8, 127 N.M. 521, 984 P.2d 768 (failure to post "Wrong Way" or "Do Not Enter" signs at highway off-ramp); *Ryan*, 1998–NMCA–116, ¶ 5, 125 N.M. 588, 964 P.2d 149 (failure to post signs warning of animal crossings). Chaves County argues that since 1991 the Court of Appeals has limited the definition of "maintenance" to "upkeep and repair," citing *Villanueva*, 1998–NMCA–138, ¶ 8, 125 N.M. 762, 965 P.2d 346. In *Villanueva*, the Court of Appeals held that the failure to install wheelchair ramps was more than a maintenance activity. The court concluded that the installation of a wheelchair ramp was a construction activity under Section 41–4–11(B). *Id.* The Court of Appeals holding should not be construed as limiting

the definition of maintenance to upkeep and repair.

{23} In this case, Rutherford is not contending that Chaves County must remedy the floodwater hazard by constructing a bridge or reconstructing the roadway. Indeed, Section 41–4–11(B) precludes such a contention. Rutherford insists Chaves County could have and should have done something more than it did, as part of its duty of ordinary care, to determine when to implement traffic controls to prevent motorists from entering Spence Road Crossing at times of flooding. We agree with the Court of Appeals that this is the same thing as saying that Chaves County's existing methods of traffic control were inadequate. *Rutherford*, 2002–NMCA–059, ¶ 19, 132 N.M. 289, 47 P.3d 448. As the Court of Appeals explained:

> [Rutherford's] allegations all make one basic contention: the County failed to achieve one objective—the timely controlling of traffic on Spence Road to keep it from entering the Walnut Creek crossing when water was high. This objective is entirely consistent with the notion of highway maintenance as developed by our appellate courts.

*Id.*

{24} Statutes are to be read in a way that facilitates their operation and the achievement of their goals. "The sole purpose of waiver in Section 41–4–11(A) is to ensure that highways are made and kept safe for the traveling public." *Miller*, 106 N.M. at 255, 741 P.2d at 1376 (emphasis omitted). Rutherford's theory of Chaves County's liability is consistent with this purpose and with the relevant precedent. *See, e.g., Lerma*, 117 N.M. at 784, 877 P.2d at 1087 ("If the [State Highway] Department is found to have breached its duty by negligently failing to erect or maintain fences along the highway, it may be held liable because such negligence falls within the waiver of sovereign immunity."); *Rickerson*, 94 N.M. at 476, 612 P.2d at 706 (department may be held liable for its failure to install traffic signals because such failure may constitute negligence in the maintenance of a highway, roadway, or street). If Chaves County is found to have breached its common law duty of ordinary care by negligently failing to control traffic in a timely fashion at the Spence Road Crossing, Chaves County may be held liable because such negligence falls within the waiver of sovereign immunity.

## CONCLUSION

{25} For the foregoing reasons, we affirm the Court of Appeals. We conclude that the identification and remediation of roadway hazards constitutes highway maintenance under Section 41–4–11 of the TCA. We hold that Chaves County is not immune from suit and remand this case for further proceedings consistent with this opinion.

{26} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and RICHARD C. BOSSON, Justices.